UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Comcast Cablevision of Carolina, Inc., a South Carolina corporation and Comcast of Georgia, Inc. a Georgia corporation, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>-vs- )<br>)<br>Stephen C. Javestski, individually and d/b/a SJ Enterprises, an unregistered South Carolina business, )<br>)<br>)<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 4:03-3995-TLW-TER<br><br><br><br><br><br>REPORT AND<br>RECOMMENDATION |

Comcast Cablevision of Carolina, Inc. and Comcast of Georgia, Inc. (Plaintiffs) filed their complaint[1] on December 17, 2003, alleging violations of the Cable Communications Policy Act of 1984, 47 U.S.C. § 553, and the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.,* as well as state law claims.

Stephen C. Javestski, individually and d/ba/ SJ Enterprises (Defendant) were served with the summons and complaint on or about December 18, 2003, by personal service conducted by the United States Marshal's Service. Proof of service was filed on or about May 17, 2004. Because Defendant failed to answer or otherwise defend, default was entered on May 17, 2004.

---

[1] This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Defendants are residents of the State of South Carolina and the acts giving rise to plaintiffs claim occurred in South Carolina; thus, this court has personal jurisdiction over Defendant.

This matter is now before the court[2] on Plaintiffs' motion for default judgment filed May 17, 2004, pursuant to Rule 55, Fed.R.Civ.P. Defendant was served with a copy of Plaintiffs' motion in accordance with Rule 5(a). A hearing was held on February 27, 2007. Plaintiffs appeared through counsel. Defendant did not appear.[3]

With their motion for default judgment, Plaintiffs submitted affidavits supporting the damages they seek. Based on the affidavits submitted and the uncontested allegations in the complaint, the court should enter judgment against Defendant as set forth below.

Plaintiffs are owners and operators of a cable television system used for the signal reception and transmission of video programming to subscribers, for pay, within the State of South Carolina, as well as forty (40) other sates, pursuant to franchises granted by the individual states. Plaintiffs offer packages to subscribers for various tiers of service. Each subscriber is entitled to receive only that level of service for which he or she pays.

The signals for Plaintiffs' cable television services use satellite facilities for transmission and other means of over-the-air communication. The signals are retransmitted through a network of cable wiring and equipment. Plaintiffs encode or scramble certain signals[4] to prevent subscribers and others from receiving programming services for which they have not paid. Plaintiffs provide

---

[2] This case was referred to the undersigned by order filed March 10, 2006, pursuant to 28 U.S.C. §636(c), and Fed.R.Civ.P. 73. However, because the defendant has not consented to the jurisdiction of the undersigned to enter final judgment, this Report and Recommendation is provided for review by the district judge.

[3] The Clerk sent notice of the hearing to the address where Defendant was served with the summons and complaint. The court's docket records indicate the mail was returned as undeliverable.

[4] These services include Pay Per View and premium services.

their subscribers with a converter and, for certain programming, a decoder to allow them to receive scrambled signals for which they have paid.[5]

"Pirate" devices exist in the "black market" which defeat the scrambling or encoding and allow for the unauthorized interception of Plaintiffs' programming services.

Defendant has been in the business of manufacturing, modifying, selling or otherwise distributing or assisting in the distribution of "pirate" descrambling devices for the unauthorized interception of Plaintiffs' cable television programming and have aided an assisted in the use of such equipment. Defendant's conduct has been with specific intent and knowledge that such equipment would be used to decode the scrambled programming services of Plaintiffs by persons not paying for those services and not authorized to receive same.

Defendant advertised and sold his "pirate" decoding/descrambling products on www.ebay.com under the user name "sj enterprises" and offered these products for sale or auction. Starting bids on eBay were $85.00 and he offered to sell them directly for an increased amount of $95.00. In email correspondence, Defendant represented to purchasers of his products "YOUR CABLE COMPANY CAN NOT TELL BECAUSE THE BOX IS BULLETPROOF AND NON ADDRESSABLE." The "pirate" products, along with installation instructions provided by Defendant, enabled the customers to obtain unauthorized access to programming services of Plaintiffs without payment to Plaintiffs.

As indicated in the auction sales from eBay, Inc., Defendant has engaged in five hundred

---

[5] Pay Per View typically are one time events and cost from approximately $4.00 to $49.99 per program. Premium services range in cost from approximately $7.00 to $13.00 per month per premium service (e.g., Cinemax, Home Box Office, and Showtime).

eighty six (586) sales of "pirate" descrambling equipment for a total gross revenue of $54,693.14.[6]

> 47 U.S.C. §553(a)(1) provides
>
>> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> § 553(a)(2) provides
>
>> For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

Defendant, without authorization of Plaintiffs, has engaged in the illegal manufacturing, modifying, selling or otherwise distributing or assisting in the distribution of "pirate" cable television descrambling/decoding equipment, knowing such equipment was primarily designed or produced for the purpose of circumventing the security functions of Plaintiffs' system and with the intent and knowledge that such equipment would be used to decode the scrambled services of Plaintiffs by persons not paying for those services and not authorized to receive the same in violation of 47 U.S.C. §553(a).

Pursuant to 47 U.S.C. §553(c)(3)(A)(i), Plaintiffs may recover its actual damages suffered and any profits of the Defendant attributable to the violation which are not taken into account in computing the actual damages; in determining the Defendant's profits, Plaintiffs must only prove Defendant's gross revenue, and the burden is on the Defendant to prove any deductible expenses. As here, Plaintiffs have presented Defendant's gross profits and has not placed into evidence the

---

[6] Electronic payment records from PayPal, Inc. and Western Union Financial Services, Inc. provide proof of some of the payments relative to the auctions and sales.

actual damages it has suffered. Therefore, the appropriate amount of damages under §553(c)(3)(A)(i) is the amount equal to Defendant's gross profits. From the evidence submitted by Plaintiffs, Defendant's gross profits amounts to $54,693.14.

§553(c)(3)(B) provides for an enhanced penalty of up to an additional $50,000 where the violation was committed willfully and for purposes of commercial advantage or private financial gain. Defendant violated the Communications Act willfully[7] and for the purpose of private financial gain. There is no indication in the record that Defendant continued his conduct after he was contacted by Plaintiffs. Also, it is presumed that Defendant had some costs associated with the sales of the "pirate" equipment for which he is not given any credit in the gross revenue figure in actual damages. Based on these facts as well as all other facts in the record, the appropriate enhanced penalty is $25,000.

Section 553(c)(2)(C) authorizes the court in its discretion to award full costs, including reasonable attorneys' fees. Plaintiffs have submitted a cost and attorney fee petition totaling $18,439.93, which the undersigned finds reasonable in this case.

Therefore, it is recommended that Plaintiffs be awarded actual damages in the amount of $54,693.14, enhanced penalty in the amount of $25,000, and fees and costs in the amount of $18,439.93, for a total judgment of $98,132.93.

For the foregoing reasons, it is recommended that Plaintiffs[8] be awarded $98,132.93 against

---

[7] The court accepts the allegations of the complaint as true when a party is in default. Also, this case involves a large number of sales of this "pirate" equipment.

[8] At the request of counsel, this amount should be awarded to Comcast Cablevision of Carolina, Inc., a South Carolina Corporation and Comcast of Georgia, Inc., a Georgia Corporation, jointly and as an undivided interest.

Stephen C. Javestski, individually and d/b/a SJ Enterprises, and the Clerk of Court be directed to enter default judgment for Plaintiffs in this amount.

February 28, 2007                                    s/Thomas E. Rogers, III
Florence, South Carolina                         Thomas E. Rogers, III
                                                                United States Magistrate Judge

**The parties' attention is directed to the important notice contained on the following page(s).**